[Crim. No. 4761. Second Dist., Div. One. Apr. 7, 1952.]

THE PEOPLE, Respondent, v. LEE BASS, Appellant.

Earl C. Broady for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

WHITE, P. J.—After trial before the court, a jury having been waived, defendant was found guilty of the crime of violation of section 11500 of the Health and Safety Code of the State of California, a felony, in that on May 31, 1951, he unlawfully had in his possession "flowering tops and leaves of Indian Hemp (*Cannabis sativa*)," commonly referred to as marijuana. He has appealed from the judgment of conviction, urging as his sole ground for reversal, that the evidence adduced was not legally sufficient to establish possession of marijuana by him.

Viewing the evidence, as we are required to do, in the light most favorable to the prosecution, it appears that on May 31, 1951, two police officers arrested defendant at 4127

South Wall Street, in Los Angeles, at which time a key was found in his right trousers pocket. When asked what the key was for, defendant replied that he did not know, did not know where it came from, and did not know why he had it. The officers then took defendant to a building, described as a shack, at 630 East 27th Street. The door of the shack was secured by a padlock, which was opened by an officer using the key taken from defendant. The premises contained two rooms. In one was a bed, a dresser, a dressing table and a trunk, and in the other a stove, an empty icebox and cooking utensils. They found no one on the premises. The officers found two small sacks of marijuana in the top dresser drawer and a large bag of marijuana in the trunk. In a wastebasket they found a repair order slip from Renney Motors containing the name of defendant, dated September 18, 1950, and a conditional sales contract with defendant's signature thereon, dated August 19, 1950. When asked about these documents, defendant stated that they had been his, but that he had not been in the shack for 90 days. Defendant told the officers, "I smoke marijuana. I smoke all of it I can get because it is good for me, but this is not mine." No clothing belonging to defendant was found in the shack.

The defendant testified that at the time of his arrest he was living at 4127 South Wall Street; that he had lived in the shack for a period of eight or nine days some 60 to 90 days before his arrest; that he had been invited to live there by a man named Jack Ward until defendant should find a place to stay. That Ward was a porter who was frequently out of town; when he was in town he would let defendant into the shack and when he was going out of town he would give defendant the key. Defendant stated, "I suppose that is how I come by that key." He last saw Jack Ward during the month of March. He recalled leaving on the premises the documents found in the wastebasket, but did not recall where in the shack he had placed them. He admitted smoking marijuana "a long time ago," but denied telling the officers that he smoked all he could get because it made him feel good.

Mrs. Willie Bogans, a resident of Bakersfield, testified that she owned the property at 630 East 27th Street; that she did not know defendant and did not rent him the property; she rented it to a Mr. Ward when she found him living there some time in March. Ward paid her two months' rent for March and April. She gave Ward a key, not to the padlock, which was not on the door when she rented the premises, but a key

to a lock fitted in the door. She never saw or heard of Ward after he paid the rent and did not receive back the key she gave him.

It is now established law in this state that in testing the validity of a judgment of conviction in a criminal case all intendments are in favor of the judgment, and a verdict of the jury or decision of the trial judge sitting without a jury will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support the judgment (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Gutierrez,* 35 Cal.2d 721, 727 [221 P.2d 22] ; *People* v. *Todd,* 91 Cal.App.2d 669, 670 [205 P.2d 453] ).

Because reviewing courts are obviously in no position to determine the credit which should be accorded to witnesses or to weigh their testimony, our Constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law.

In conformity with the spirit and intent of the constitutional provision, the Legislature has ordained that the triers of fact are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847), and are the judges of the effect and value of evidence addressed to them, except in those instances where it is declared by law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061).

In the instant case the question presented to us is whether the circumstances here in evidence are such as to reasonably justify the inference of guilt. Even though it be conceded that an inference of innocence might also reasonably be drawn from the circumstances, it was for the trial judge in the case at bar to choose between these two inferences, and unless the evidence obviously does not reasonably warrant the inference of guilt as adopted by the trial court, we are powerless to interfere.

The power of a trial court to draw an inference of guilt is not of course an arbitrary and unbridled one because section 1958 of the Code of Civil Procedure defines an inference as ". . . a deduction which the reason of the jury makes from the facts proved, without an express direction of the law to that effect.''

Section 1960 of the same code provides that an inference must be founded,

"1. On a fact legally proved; and

"2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature."

 Viewing the evidence in the light of the foregoing rules we find in the record evidence that when approached by the officers, a key to the padlock on the shack was found in appellant's pocket. Using this key, the officers opened the door to the shack. When asked how the key came into his possession appellant gave an evasive answer to the effect that he did not know how he got the key or where it came from. The only items found in the shack, aside from furnishings, were documents belonging to appellant and the marijuana. From these facts it could reasonably be concluded that while appellant may have resided elsewhere he did use the shack for certain purposes. It is in evidence that the landlady took very little if any interest in this particular structure.

Further strengthening the inferences from these facts are the statements hereinbefore narrated, made to the officers, in which appellant said that he was a user of marijuana and smoked all he could get. At the trial, while denying that he made these statements, appellant admitted that he was familiar with marijuana and that at one time he had smoked it. As to the contention that others might have had access to the shack the evidence all pointed to appellant as having such access. The absence of clothing or food in the shack might be considered as negativing occupancy by the previous tenant, Jack Ward.

Appellant testified that he "supposed" he obtained the key from Jack Ward. However, it was shown in evidence that the key given Jack Ward by the landlady was not a padlock but to a lock installed in the door.

The evasiveness of appellant's testimony in explaining his possession of this key was also a factor which militated against his contentions.

There were also certain other inconsistencies in appellant's testimony which the trier of fact could take into consideration. When asked when he had lived at the shack appellant answered he had lived there only eight or nine days beginning the latter part of January. At the trial he testified he had not

lived there for 60 or 90 days. This latter statement coincides with the landlady's testimony that Ward first commenced living in the shack during the month of March.

In support of his contention that the evidence fails to support the conclusion reached by the trial judge that appellant had "possession" of the narcotics in question, he relies heavily upon the case of *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]. But the facts of the case cited are strikingly dissimilar to the one at bar and can be accordingly distinguished. In the instant case the marijuana was found in a shack, from the appearance and contents of which the court was warranted in assuming was under the control of appellant. Therefore, the finding that appellant had control of the marijuana, or at least joint control with Ward, was reasonable.

Furthermore, in the Gory case, *supra,* the court was mainly concerned with the question of claimed error in the refusal to give proper instructions with regard to the constituent elements of the offense.

In the case now engaging our attention, we are satisfied that under the circumstances here present, the court was warranted in drawing the inference that appellant had possession of and knowledge of the presence of the narcotics in the aforesaid shack as well as the nature of the contraband contained in the shack.

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.