Filed 5/19/14  P. v. Osbourn CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br> WALTER LEROY OSBOURN III,<br><br>  Defendant and Appellant. | C074353<br><br>(Super. Ct. Nos. CR53993, CR54247) |

Stemming from two separate incidents involving the execution of a search warrant and the response of police officers to a domestic violence report, the trial court found defendant Walter Leroy Osbourn III guilty of possession of Vicodin, possession of hydrocodone, attempted burglary, corporal injury to a cohabitant, and several other counts.[1]  On appeal, defendant argues there was insufficient evidence to prove he

---

[1]     The trial court consolidated the two cases resulting from the two incidents into one trial.  There was also a third case consolidated into this trial that is not at issue.

1

possessed either Vicodin or hydrocodone. Defendant also contends the court should have stayed punishment for the attempted burglary because it "arose in the same course of conduct and with the same objective as" what defendant characterizes as the "assaultive conduct" for which the court had already sentenced him. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*May Incident (Case No. 53933)*

The first incident arose out of the execution of a search warrant by a detective in the Colusa County Narcotics Task Force. During the course of the search, Detective Jose Ruiz found Vicodin and hydrocodone located with defendant's other property.

Detective Ruiz served a narcotics-related search warrant at a single-wide, one-bedroom trailer. Defendant and two others were inside the trailer when Detective Ruiz served the search warrant. In the bedroom , Detective Ruiz found methamphetamine on a mirror and in a pen tube, several small baggies, a large black plastic bag, a scale, over $1,300 in cash, concentrated cannabis, a bottle containing Vicodin, and a bottle containing hydrocodone.

After discovering these items, Detective Ruiz questioned defendant. Defendant explicitly stated to Detective Ruiz that he owned the methamphetamine and concentrated cannabis found in the bedroom. Defendant did not admit or deny ownership of the Vicodin and hydrocodone; he only admitted he did not have a prescription for either item. In a court trial, the court found him guilty of seven separate counts, including two counts of possession of a controlled substance relating to the Vicodin and hydrocodone.

II

*July Incident (Case No. 54247)*

The second incident was the culmination of an altercation between defendant and his girlfriend that began earlier in the evening at a casino and continued over the course

2

of three separate episodes that night and in the early morning of the next day at his girlfriend's apartment.

Chantel Parker, defendant's girlfriend, went to a casino to celebrate her birthday. Defendant and Parker had a "pushing [and] shoving match" at the casino. The altercation turned violent when defendant grabbed Parker's hair and dragged her down a hallway after she fell to the floor. About an hour after the attack, Parker left the casino and decided to return to her apartment. Fearing defendant might assault her at her apartment when she returned home, Parker stopped at the Colusa County Sheriff's Department, located across the street from her apartment, and asked for an escort. City of Colusa police officers were dispatched to the sheriff's department and escorted Parker back to her apartment. As part of the escort, the officers entered Parker's apartment and found defendant in Parker's bedroom. Defendant left but returned three to five minutes later and began yelling and knocking on the back door. Parker immediately ran out of her apartment to the sheriff's department to report the incident. Officers responded and defendant left again.

Approximately three to five hours later, Parker awoke[2] to "someone banging on [her] kitchen window and door." (An officer later observed that the window screen on the kitchen was bent outward and damaged.) Suspecting it was defendant, Parker asked "who's there," and moved toward the front door. At the front door she said, "that's it I've had it . . . [I'm] headed back to the sheriff's department for help." Just as she exited the front door of her apartment, defendant grabbed her by the neck, hit her in the face, and started choking her on the ground. He then began to pull her into the apartment and

---

[2]      Parker could not recall why she awoke during the third incident. She did not answer any further questions describing the third incident but admitted to a letter she wrote on the day after the incident, which became the factual basis for the trial court's finding.

threatened to kill her "if she contacted law enforcement" or "called the police." Defendant continued to attack Parker inside the apartment. At some point, defendant stopped the assault, let Parker put her head on his shoulder, got her an ice pack, and carried her to bed. In the morning, defendant and Parker remained at the apartment until police officers arrived in response to a domestic violence report.

On these facts, the trial court found defendant guilty of eight charges, including attempted burglary and the "assaultive conduct" (corporal injury to a cohabitant), false imprisonment, and criminal threats. At sentencing, the trial court imposed an upper term of four years on the corporal injury conviction, a consecutive eight-month term on the attempted burglary conviction, an additional consecutive eight-month term on the false imprisonment conviction, and stayed the two-year sentence on the criminal threats charge pursuant to Penal Code[3] section 654. The court stated that it chose consecutive terms because the crimes were "independent in the criminal motive for their commission, [and] were committed at separate times and places."

## DISCUSSION

### I

### *Possession Of Vicodin And Possession Of Hydrocodone*

Defendant argues there was insufficient evidence to convict him of both possession charges. He contends the prosecution did not demonstrate he had dominion or control over either the Vicodin or hydrocodone. He also argues that nothing in the record demonstrates that he lived in the room where Detective Ruiz found the Vicodin and hydrocodone. Defendant's arguments are unpersuasive.

" 'On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence

---

[3]     All further section references are to the Penal Code.

4

that is reasonable, credible and of solid value--from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1572.)  To meet this standard, the record must provide substantial "evidence of each of the essential elements of the crime." (*People v. Hernandez* (1988) 47 Cal.3d 315, 345-346.)  "An appellate court's function is to correct errors of law; and where a jury has been waived, . . . [the trial court is] [t]he trier of fact [and] is the sole judge of the weight and worth of the evidence." *(People v. Hills* (1947) 30 Cal.2d 694, 701.)  " 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict.' " (*Sanghera*, at p. 1573.)

It is well established the elements of possession of a controlled substance are "physical or constructive possession thereof coupled with knowledge of the presence of the drug and its narcotic character." (*People v. White* (1969) 71 Cal.2d 80, 82.) "Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People v. Williams* (1971) 5 Cal.3d 211, 215.)  The court may establish possession through reasonable inferences drawn from circumstantial evidence. (*Ibid.*)

Detective Ruiz found defendant inside the trailer while serving the search warrant. Because of the small size of the trailer, defendant could easily access all of the items discovered in the bedroom.  Detective Ruiz also discovered both substances in the bedroom where defendant had dominion and control over his personal effects.  When questioned by Detective Ruiz, defendant admitted the methamphetamine and concentrated cannabis discovered in the bedroom were his property.  From this evidence, the court could reasonably infer defendant had constructive possession of the Vicodin and hydrocodone because they were located with his other property.  Although defendant did

5

not admit owning either substance, it is not necessary for defendant to explicitly admit owning either the Vicodin or hydrocodone for the court to properly find he possessed a controlled substance. (*People v. Bass* (1952) 110 Cal.App.2d 281, 285.)

In *Bass*, the defendant had a key that provided him immediate and exclusive access to a two-room shack. (*People v. Bass*, *supra*, 110 Cal.App.2d at pp. 281-282.) When police searched the shack they found documents belonging to the defendant and marijuana in one of the rooms. (*Id.* at p. 282.) The defendant admitted owning the documents but denied ownership of the marijuana. (*Ibid.*) The appellate court affirmed the trial court's finding that the defendant had constructive possession of the marijuana because he had access to the shack and the marijuana was located with his other property. (*Id.* at p. 285.) This case is similar to *Bass* because the Vicodin and hydrocodone were found in a room where defendant had a right to control his other property.

Defendant's other argument -- that there is insufficient evidence of possession because the other people in the trailer had access to the Vicodin and hydrocodone -- is also without merit. "Exclusive possession is not necessary" to support a finding that defendant constructively possessed the Vicodin and hydrocodone. (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) Therefore, it was proper for the trial court to find defendant possessed both substances even though the others in the trailer also may have had a right to exercise dominion and control over the bedroom.

II

*Penal Code Section 654 -- Attempted Burglary*

The trial court found defendant guilty of attempted burglary for trying to enter Parker's apartment during the July incident and also found him guilty of corporal injury to a cohabitant for attacking Parker during the same incident. Defendant argues that because the attempted burglary charge arose from the same course of conduct and with the same objective as his "assaultive conduct," the sentence for attempted burglary must be stayed pursuant to section 654. We disagree.

6

Section 654, subdivision (a) provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 is applicable when a course of conduct violates more than one statute. (*Neal v. State* (1960) 55 Cal.2d 11, 19.) The court must decide whether the course of conduct "comprised a divisible transaction which could be punished under more than one statute within the meaning section 654." (*Ibid.*) To determine whether a course of criminal conduct is divisible, the court must determine the intent and objective of the defendant. (*Ibid.*) If the court determines the defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other, [the defendant] may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639; *People v. Vidaurri* (1980) 103 Cal.App.3d 450, 464-465.) " '[M]ultiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm.' [Citation.] Under section 654, a course of conduct divisible in time, though directed to one objective, may give rise to multiple convictions and multiple punishment 'where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' " (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717-718.)

"The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial. [Citation.] The factual finding that there was more than one objective must be supported by substantial evidence." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) " '[W]e review the trial court's findings "in a light most favorable to the

7

respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Lopez*, *supra*, 198 Cal.App.4th at p. 717.)

Here, we must determine whether the record contains evidence that could reasonably lead to the conclusion that defendant's objectives in committing the attempted burglary and the "assaultive conduct" were divisible. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.) Defendant argues the attempted burglary and the "assaultive conduct" shared the same intent and objective, which was to assault Parker. In other words, defendant contends he was trying to enter Parker's apartment in order to physically assault her, which he ended up doing when she exited her apartment to contact the sheriff's department. The People, on the other hand, argue there was substantial evidence to support the court's implied finding of two different objectives and that the acts were temporally separated such that defendant could reflect and renew his intent to commit the offenses. We agree with the People's second contention.

Substantial evidence supports the conclusion that defendant's intent during the attempted burglary was simply to assault Parker. Every time defendant was alone with Parker that evening, he acted in a violent manner toward her. He also continued to attempt to enter Parker's apartment twice after sheriff's deputies removed him from the residence. Each time he returned he yelled and attempted to break in through a window or a door, which the trial court could have logically found demonstrated his continued intent to assault Parker. The record also demonstrates Parker was fearful of defendant attacking her, which provides context to demonstrate defendant's intent. Parker feared a potential attack by defendant when she requested an escort from the police officers upon returning home from the casino. She also was fearful when she ran to the sheriff's department after defendant returned to her apartment yelling and banging on her back door. One police officer also testified that Parker feared if she did contact the sheriff's department, defendant would harm her. When the trial court viewed the defendant's

8

actions in the context of the entire evening, it could have reasonably determined defendant's objective during the attempted burglary was to assault Parker because he continued to demonstrate violent behavior toward Parker, which Parker's fear substantiated.

Although substantial evidence also supports a finding that the intent and objective of the assault was the same as the attempted burglary, the trial court could have reasonably determined that defendant reflected on and renewed his intent between the attempted burglary and the assault on Parker. (See *People v. Lopez*, *supra*, 198 Cal.App.4th at p. 698; *People v. Louie* (2012) 203 Cal.App.4th 388, 399; *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289.) Defendant initially attempted to break into Parker's apartment by damaging a screen on the kitchen window and banging on the door. Subsequently, Parker awoke, got out of bed, attempted to talk to defendant through the door, opened the front door, and proceeded to leave her apartment. After these events occurred, defendant assaulted Parker. The offenses were divisible in time because defendant had time to reflect and renew his intent, which created a new risk of harm to Parker. Accordingly, the trial court did not err in refusing to stay the sentence for attempted burglary.

DISPOSITION

The judgment is affirmed.


    ROBIE       , Acting P. J.

We concur:


    BUTZ       , J.


    DUARTE      , J.