[Crim. No. 6748.   Second Dist., Div. Two.   Dec. 18, 1959.]

THE PEOPLE, Respondent, v. CLIFFORD STANFORD et al., Defendants; JACK CHARLES COLEMAN, Appellant.

Ellery E. Cuff, Public Defender, Wilbur F. Littlefield and Richard W. Erskine, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

FOX, P. J.—Appellant Coleman was charged, in two counts, with violating section 11500 of the Health and Safety Code: count I, possession of heroin; count II, possession of cocaine. His codefendants were Clifford Stanford, Maurice Leon Willis, and Mrs. Williams. Coleman was convicted on both counts. He has appealed from the judgment and from the order denying his motion for a new trial.

At approximately 10:30 p.m. on November 25, 1958, Officers Beckmann, Northrup and Caskey, of the Los Angeles Police Department, accompanied by State Narcotic Inspectors Barry and Gabelson, placed under surveillance the residence at 5543 Smiley Drive. Prior to that time Officer Beckmann had arrested a narcotic user who informed him that defendants Stanford and Mrs. Williams were living at the Smiley Drive address and dealing in narcotics. Stanford was well known to Officers Beckmann and Northrup because of his previous narcotic activities.

Upon arriving at the above address, Inspector Barry recognized a girl sitting in a nearby car as a person he had previously arrested on a narcotics charge. She told the officers that she was waiting for Maurice Willis, who was in Stanford's place buying narcotics. While Officer Beckmann was standing by the front porch of the house, he saw Stanford and Willis leaving by the front door. The officer ran toward them. Just before he reached them Stanford dropped two objects; one was a box and the other a paper receptacle. When Beckmann reached Stanford and Willis he attempted to restrain them. As a result of the encounter, all three men fell to the ground on the lawn in front of the house. When they arose, a yellow balloon was found directly beneath the spot where Willis had fallen. The officer retrieved these objects, which were found to contain heroin and cocaine.

When searched, $2,542 was found on Stanford's person.

When the officers entered the house they found Mrs. Williams and Coleman, and arrested both of them.

On searching the premises, Officer Northrup found a balloon containing a white powder and two eyedroppers, with hypodermic needles attached, on a shelf in the bathroom. One of these eyedroppers was approximately half full of a clear liquid, which proved to be an opium alkaloid possessing narcotic properties. They also found a blue balloon in the bathroom which contained heroin. Prior to Stanford and Willis' leaving the house, Officer Northrup had stationed himself beneath the bathroom window. While standing there he heard three male voices and the sound of balloons being snapped. He recognized two of the voices in the bathroom as being those of Stanford and Willis. The only persons later found in the house, besides Mrs. Williams and Willis, were the former's children. Coleman was arrested in the living room. No narcotics were found on Coleman's person or in the living room. Stanford testified that he and defendant Williams lived in the house; that all of the narcotics were his, and he explained his method of purchase and sale. Stanford further testified that Coleman was at his house at his invitation to assist him in taking Mrs. Williams' baby daughter to the doctor. In explanation of the reason why this mission had not already been carried out, he said that they were waiting for the child to wake up. Mrs. Williams denied that Coleman came there for such purpose.

Defendant did not take the witness stand.

In seeking a reversal, appellant contends that the evidence is insufficient to support the conviction in that there is no evidence to show that he had possession of any of the contraband. We have concluded that his position is well founded.

To justify a conviction of unlawful possession of narcotics, the prosecution must prove actual or constructive possession of the contraband by the accused and knowledge of its presence and narcotic character. (*People* v. *Gory,* 28 Cal.2d 450, 456 [170 P.2d 433] ; *People* v. *Winston,* 46 Cal.2d 151, 161 [293 P.2d 40] ; *People* v. *Denne,* 141 Cal.App.2d 499, 510 [297 P.2d 451].) These essential facts may, of course, be established by circumstantial evidence. (*People* v. *Robarge,* 151 Cal.App.2d 660, 668 [312 P.2d 70].) To prove possession, ''the narcotics need not be found on the person of the defendant, it being sufficient if such articles are deposited in a place under the possession and control of

the accused [citations]." (*People* v. *Vice,* 147 Cal.App.2d 269, 274 [305 P.2d 270].)

We shall now analyze the evidence. It shows that no contraband was found on the person of the defendant. He committed no furtive act and made no incriminating statement. Nor were any narcotics found in the living room where he was arrested. There is no basis for an inference that Coleman had constructive possession of the narcotics found in the bathroom for he did not live there and therefore he did not have possession or control of the premises. They were occupied by Stanford and Mrs. Williams and her children. The People argue, however, that the unidentified male voice in the bathroom that Officer Northrup heard must have been that of Coleman since he was the only man in the house besides Stanford and Willis, whose voices the officer recognized. Thus Coleman was placed in the bathroom where the narcotics were found with Stanford, who was apparently making a sale to Willis in view of his purpose in coming there, according to his female companion and the narcotic contents of the articles found on the front lawn after the officer's scuffle with Stanford and Willis. But Coleman's presence in the bathroom neither establishes his possession of the contraband nor justifies an inference to that effect. It does not show that the narcotics in question were under his dominion and control.

The facts in *People* v. *Tabizon,* 166 Cal.App.2d 271 [332 P.2d 697], are strikingly similar to those in the instant case. There, as here, the premises were being used to dispose of narcotics. In each case the appellant was a visitor. Appellant neither made any statement nor performed any act from which the court could draw inferences adverse to him. In the Tabizon case, appellant was watching television when the police entered; it was in that room of the motel that they discovered a rubber container with 43 capsules of heroin in it lying on top of a chest of drawers. In holding that "the evidence was insufficient to prove appellant guilty of possessing heroin" the court stated (p. 273) : "The mere fact that he was present in the motel room would not, standing alone, justified a finding of guilt." The case of *People* v. *Crayton,* 156 Cal.App.2d 305 [319 P.2d 731], is also strikingly similar. In that case, the defendant was apprehended in a hotel room in the company of the codefendant, Hancock, who threw a bundle containing narcotics out of the window when the police officers knocked at the door. After summarizing the

evidence, the court stated (p. 309) : "Boiled down, the only evidence purporting to show joint control and dominion over the heroin is the fact that he [Crayton], an addict, was in the room from which the heroin was thrown and that he changed his story as to seeing something thrown out of the window." The court then concluded (p. 310) : "The mere fact that an addict is in a room from which a narcotic is thrown is not sufficient to prove that he had any dominion or control over it. Mere presence at the scene of the crime standing alone is not sufficient to justify a finding of guilt. (Citing cases.) Nor was the change in story sufficient to prove it." (See also *People* v. *Foster,* 115 Cal.App.2d 866, 868 [253 P.2d 50].) So, in the instant case, the mere presence of appellant in the house, even in the bathroom with Stanford and Willis, does not justify a finding that he had possession of any of the contraband there.

The People point to the conflict in the testimony of Stanford and Mrs. Williams as to why appellant was in their home that night and the failure of appellant to provide the explanation therefor since he did not testify. The conflict in the testimony of these two witnesses and the exercise by the appellant of his constitutional right not to testify cannot be held to supply the deficiency in the People's case.

To permit the verdicts to stand in this case would be equivalent to approving jury verdicts based on speculation and suspicion. Such, of course, is not the law.

The judgment and order are reversed.

Ashburn, J., and Herndon, J., concurred.