[Crim. No. 32277. Second Dist.. Div. Five. Apr. 4, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE CALVERT JENKINS, Defendant and Appellant.

**COUNSEL**

Billy H. Hairston, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and John A. Saurenman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUS, P. J.**—After a court trial, defendant was found guilty of one count of manufacturing phencyclidine (PCP) (Health & Saf. Code, § 11379) and one count of possession of piperidine and cyclohexanone with the intent to manufacture phencyclidine (Health & Saf. Code, § 11383, subd. (b).) He was sentenced to state prison for a term of four years.

Defendant's main argument on appeal is that the evidence does not support his conviction.

### FACTS

The case arose when police officers on July 26, 1977, discovered a laboratory apparently used for the manufacture of PCP. The laboratory

was in a detached garage located behind a house at 3546 Gale Avenue in Long Beach, the residence of defendant's brother Gregory Jenkins and Gregory's girl friend.

The police entered the garage through a slightly opened door and found various beakers, bottles, vials and cans containing an impressive array of chemicals: cyclohexanone, cyanide, magnesium, iodine crystals, bromobenzene, hydrochloric acid, petroleum ether, piperidino-cyclohexane carbonitrate, and PCP. Fingerprints were lifted from 12 of the laboratory items. Fingerprints of defendant's brother Gregory were found on an empty plastic beaker and on a 500 milliliter glass which contained an unidentified liquid. Defendant's prints were found on three items: (1) a partial palm print was found on the lid of a five-pound plastic bottle containing sodium cyanide; (2) a right middle fingerprint was lifted from a six thousand milliliter flask which contained an unidentified residue; (3) prints of his right thumb, right index and right middle finger were found on a sixteen-ounce vial which bore the label "sodium bisulfate."

Long Beach Police Sergeant James Sutton went to speak to defendant at the Long Beach jail, where defendant was being held under arrest for an unrelated offense. Defendant denied that his name was George Jenkins and claimed that he was Anthony Jenkins, the name he had given when booked on the unrelated charge. In answer to specific questions, he told Sergeant Sutton that he was not involved with the manufacture of PCP at his brother's residence, that he had not assisted his brother in setting up the laboratory, and that he had not handled any of the containers in the laboratory. When Sergeant Sutton told defendant that his fingerprints had been found on several of the containers, defendant "could give no reason" for that fact and again denied handling anything in the lab.

At trial, an expert chemist testified that in his opinion the chemicals found in the garage were there for the purpose of manufacturing PCP. Specifically, he stated that the necessary ingredients for compounding phencyclidine were peperidinocyclohexane carbonitrite, petroleum benzene, and magnesium.

Testifying in his own defense, defendant continued to deny any knowledge of the laboratory or of how his fingerprints had got on the items found there.

DISCUSSION

■ As noted, defendant claims that the evidence was inadequate to support either the conviction of manufacturing PCP or of possessing piperidine and cyclohexanone with the intent to manufacture PCP.[1] We first consider the sufficiency of the evidence on the possession count.

Before analyzing the sufficiency of the facts that were proved, it should be kept in mind just what the prosecution did not prove: (1) there was no evidence of the age of the fingerprints which were lifted from the containers in the garage; (2) there was no direct evidence where those containers were when defendant touched them; (3) there was no direct evidence of what was in the containers when defendant touched them; (4) there was no evidence, direct or indirect, that the contents of the containers touched by defendant were used in the manufacture of PCP. It is also noted that the fact that defendant gave Officer Sutton a false name is of no probative value as to the offenses involved in this case, since defendant had supplied that false name when he was earlier arrested on an unrelated offense.

■ The elements of the offense of possession of restricted drugs are physical or constructive possession with knowledge of the presence and narcotic character of the drug. (*People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146].) In addition, Health and Safety Code section 11383, subdivision (b) required that the chemicals be possessed with the intent to manufacture PCP.

There clearly was no evidence that defendant physically possessed the substances in question. ■ As far as constructive possession is concerned, it "occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People* v. *Newman* (1971) 5 Cal.3d 48, 52 [95 Cal.Rptr. 12, 484 P.2d 1356], overruled on other grounds in *People* v. *Daniels* (1975) 14 Cal.3d 857, 862 [122 Cal.Rptr. 872, 537 P.2d 1232].)

[1]The piperidine and cyclohexanone here were in the form of the compound piperidinocyclohexane carbonitrate. The People's expert chemist testified that the latter substance was a combination of piperidine, cyclohexanone, and other chemicals.

■ In the present case, the People sought to prove defendant's access to the piperidine-cyclohexanone compound by the fact that his fingerprints were on three containers containing other substances, which were, however, constituents of a laboratory in which PCP was being manufactured. While the portability of the containers would permit equally plausible inferences that defendant touched them at a place other than the garage or at a time when the piperidine and cyclohexanone were not in the garage, the choice among the several permissible inferences from circumstantial evidence was for the trier of fact, not us. (*People* v. *Redrick* (1961) 55 Cal.2d 282, 289-290 [10 Cal.Rptr. 823, 359 P.2d 255].)

On the other hand, there is a limit to the mileage that can be obtained from the fingerprint evidence. The only fact directly inferable from the presence of the fingerprints is that sometime, somewhere defendant touched the containers. ■ While given all the circumstances it was not unreasonable for the court to infer from the fingerprints that defendant was present in the garage when the piperidine-cyclohexanone compound was also there, more than mere presence must be shown in order to prove constructive possession: the People must also show that defendant had dominion and control over the contraband. (*People* v. *Stanford* (1959) 176 Cal.App.2d 388, 391 [1 Cal.Rptr. 425]; *People* v. *Tabizon* (1958) 166 Cal.App.2d 271, 273 [332 P.2d 697].)

The inference of dominion and control is easily made when the contraband is discovered in a place over which the defendant has general dominion and control: his residence (see, e.g., *People* v. *Bagley* (1955) 133 Cal.App.2d 481, 484-485 [284 P.2d 36]), his automobile (see, e.g., *People* v. *Newman, supra,* 5 Cal.3d at p. 53), or his personal effects (see, e.g., *People* v. *Bass* (1952) 110 Cal.App.2d 281, 284 [242 P.2d 685].) However, when the contraband is located at premises other than those of the defendant, dominion and control may not be inferred solely from the fact of defendant's presence, even where the evidence shows knowledge of the presence of the drug and of its narcotic character. Thus in *People* v. *Stanford, supra,* the evidence showed that codefendant Coleman was visiting Stanford's house and was present in the bathroom during a sale of heroin by Stanford to another man. A bindle of heroin was later found in the bathroom. The court reversed Coleman's conviction of possession of heroin, stating, "There is no basis for an inference that Coleman had constructive possession of the narcotics found in the bathroom for he did not have possession or control of the premises." (*Id.,* 176 Cal.App.2d at p. 391); see also *People* v. *Tabizon, supra*; *People* v. *Hancock* (1957) 156 Cal.App.2d 305, 310 [319 P.2d 731].)

■ In sum: even if the fingerprint evidence is interpreted—as it evidently was—to place defendant in the garage at a time when the substances prohibited by section 11383, subdivision (b) of the Health and Safety Code were also present in that room, it furnishes no evidence of (1) possession, actual or constructive, (2) knowledge, or (3) intent to manufacture PCP. The People's brief bridges these formidable evidentiary gaps by stating simply that "[a]ppellant's involvement with the phencyclidine laboratory is also shown by his denial of even touching any of the paraphernalia and his continuing denial when confronted with the presence of his fingerprints. Finally, appellant used a false name over an extended period in custody, further showing his consciousness of guilt." No authority is cited. In our opinion this argument puts entirely too heavy a burden on the evidence of defendant's falsehoods. While there can be no question that evidence of such falsehoods is admissible as indicating a consciousness of guilt—as, in a proper case, is evidence of flight, escape, concealment, spoliation, intimidation of witnesses and the like—the People's argument confuses admissibility with sufficiency to support a finding. (Cf., *People v. Gould* (1960) 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865]; *In re Eugene M.* (1976) 55 Cal.App.3d 650, 656-659 [127 Cal.Rptr. 851].) It assumes that evidence admissible merely because it tends "to corroborate the proponent's case *generally* and . . . discredit the adversary's case *generally* . . ." (McCormick, Evidence (2d ed. 1972) p. 661, italics added) will also, by itself, support findings on each and every element of the proponent's case—as if a defendant's falsehoods were evidentiary wild cards with which the prosecution can turn a pair of deuces into a full house.

We disagree. We need not go as far as some authorities suggest and hold that evidence of consciousness of guilt is never, in itself, sufficient to convict.[2] It is enough for present purposes that the particular circum-

---

[2]While, as we said in the text, we attempt to state no general rule that evidence of statements or of other acts showing a consciousness of guilt is, by itself, insufficient to support a finding of guilt, we note certain authorities and analogies pointing in that direction. In *Hickory* v. *United States* (1896) 160 U.S. 408, 416-417 [40 L.Ed. 474, 477, 16 S.Ct. 327] the court said that it was "undoubted that acts of concealment by an accused are competent to go to the jury as tending to establish guilt, yet they are not to be considered as alone conclusive, or as creating a legal presumption of guilt; they are mere circumstances to be considered and weighed in connection with other proof with that caution and circumspection *which their inconclusiveness when standing alone* requires." (Italics added.) McCormick flatly states that as a general rule such evidence "will not supply a want of proof of a particular fact essential to the proponent's case." (McCormick, Evidence (2d ed. 1972) p. 662; see also *United States* v. *Johnson* (2d Cir. 1975) 513 F.2d 819, 824; ". . . falsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where

stances under which this defendant uttered his falsehood, make the evidence insufficient to support the missing elements of the People's case.

There are just too many reasons other than that defendant harbored a guilty conscience about (1) possessing the contraband, (2) knowing its nature and (3) intending to use it to manufacture PCP, which easily explains his lie. He had just been advised that his brother's garage was an illegal PCP lab and that he himself was accused along with the brother. After he had denied being involved with the lab operation, he was asked whether he had handled "any of the chemicals, bottles, containers, or apparatus involved in the laboratory at that location." Then followed the presumably false denial which, on the People's submission, takes the place of any other proof on the issues of possession, knowledge and intent to manufacture. Under the circumstances, however, any such pinpointed inference seems completely overshadowed by the many other plausible reasons for the falsehood.[3] Chiefly, one would suppose, the circumstances created an acute consciousness—guilty or innocent—of impending legal difficulties of one kind or another, avoidable perhaps if defendant managed to put maximum distance between himself and the place where he was told his brother ran an illegal PCP lab. Further, the fact that his brother was charged along with him, would make defendant suspect that even if the charges against defendant himself were dropped, the police might still look to him as a possible witness, a "snitch"—a function which he would just as soon not fulfill. Technically, the probative force of the falsehood is further diluted by the fact that there is really no showing at all that defendant was even aware of the specific elements of the fairly uncommon offenses with which he would later be charged. In short, there is no logical basis to relate the lacunae in the People's proof to defendant's false denial except by the rankest speculation and refusal to consider inconsistent explanations pointing to innocence. (*People* v. *Hall* (1964) 62 Cal.2d 104, 110 [41 Cal.Rptr. 284, 396 P.2d 700].)

other evidence of guilt is weak . . ."; *United States* v. *Kearse* (2d Cir. 1971) 444 F.2d 62, 64; *United States* v. *McConney* (2d Cir. 1964) 329 F.2d 467, 470.)

Closer to home it is settled by statute that one type of conduct evincing a guilty conscience—flight—is not sufficient to establish guilt. Section 1127c of the Penal Code in fact commands us to so instruct the jury. The authors of CALJIC have taken the logical step and declared in a series of instructions (CALJIC Nos. 2.03, 2.04 and 2.06) that neither evidence of falsehoods—yes, falsehoods—nor of attempts to fabricate evidence nor of efforts to suppress evidence are, in themselves, sufficient to establish guilt.

[3] In *Hickory* v. *United States, supra,* 160 U.S. at page 417 [40 L.Ed. at page 477], the court quotes from a Massachusetts opinion (*Commonwealth* v. *Webster,* 5 Cush. 295, 317) where it was said: ". . . an innocent man, when placed by circumstances in a condition of suspicion and danger, may resort to deception in the hope of avoiding the force of such proofs."

The deficiencies in the evidence on the possession count obviously apply with even greater force to the conviction on the charge of manufacturing PCP. Since we determine that the evidence was insufficient to sustain the judgment of conviction on either count, it is unnecessary to discuss defendant's other claims of error.

The judgment of conviction is reversed.

Stephens, J., and Hastings, J., concurred.