Filed 1/11/16  P. v. Perez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B260793 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA414108) |
| v. | |
| BRIAN PEREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed as modified.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Robert C. Schneider, Deputy Attorney General for Plaintiff and Respondent.

Defendant Brian Perez (defendant) was present inside an acquaintance's home used to manufacture concentrated cannabis when an explosion occurred. Expert investigators testified that butane, which is used to manufacture concentrated cannabis, accumulated in one of the bedrooms in the house and ignited, causing the explosion. Defendant, badly burned, made it out of the house after the explosion and told a neighbor that he and two other men had been working on "a project" that had gone wrong. The District Attorney charged defendant with manufacturing concentrated cannabis, vandalism, and recklessly causing a fire. At trial, defendant testified in his own defense and denied participating in any drug manufacturing activity; he claimed he gave a friend a ride to the house and was merely present in the room where the explosion originated. We are asked to decide, among other issues, whether sufficient evidence supports the jury's verdict convicting defendant on the cannabis manufacturing charge.

FACTS

On July 6, 2013, at approximately 7:00 p.m., an explosion occurred inside a house located in the 13700 block of Sproule Avenue in Sylmar; the explosion caused a significant fire. The house was being rented by various members of the De La Cruz family.

A.     Testimony from Neighbors and Investigators

Several neighbors heard the explosion and went outside to see what happened. Eddie Uribe, who lived on Phillippi Street, went into his backyard, which was separated from the backyard of the De La Cruz house by a five to six foot tall cinder block wall. From there, he saw the De La Cruz house engulfed in flames and heard screams from the house. Uribe saw defendant jump over the cinder block wall and land in his backyard. Uribe had never seen defendant before. Defendant was burned from the waist up and appeared dazed. He asked for water. Uribe sprayed water onto defendant with a hose, but defendant did not react. He kept walking, toward Phillippi Street. Defendant

crossed Phillippi Street and ended up on the lawn of Edwina Lomeli. Lomeli did not know defendant, and had never seen him before.

According to Lomeli, defendant was badly burned, seemed to be suffering severe pain, wasn't acting normal, and appeared to be in shock. When Lomeli asked defendant questions, however, he was able to talk and he responded logically. At trial, Lomeli testified that she "ask[ed] him what had happened." According to Lomeli, "[Defendant] had told me there was a project that went wrong." The prosecutor asked Lomeli, "And when you asked about what had happened prior to that, who did he tell you had been doing the project?" Lomeli replied, "He just said it was him and his friends." The prosecutor asked, "Did he tell you how many friends?" Lomeli replied, "He had said it was two other guys there." Lomeli asked defendant if he wanted to call his parents. Defendant eventually gave Lomeli his mother's phone number and Lomeli called her. Lomeli spoke with the mother and conveyed defendant's statements to her. Defendant told his mother that "he was sorry."

At 7:10 p.m., just minutes after defendant reached Lomeli's lawn, Los Angeles Fire Department Paramedic Anthony Trejo came to the location. He observed defendant was badly burned, but capable of responding to Trejo's questions. Trejo performed a number of tests on defendant and found him to be oriented with good mental capacity. Defendant received the highest possible score on the Glasgow Coma Scale, indicating that he was not confused. Trejo did not observe defendant go into shock, and defendant was coherent. In response to Trejo's questions about what had happened, defendant stated that an explosion had occurred. He did not provide any details, and Trejo thought he was being evasive about the cause of the fire.

An investigation of the explosion and fire began almost immediately. Los Angeles Fire Department Arson Investigator Timothy Crass concluded the explosion and fire originated in the middle rear bedroom of the house. He found 15 to 20 exploded cans of butane in that room, including one can which was embedded into a wall. Crass explained butane is heavier than air and will settle to the ground. When people move in an enclosed room, it can stir up the butane and any spark, including static electricity,

3

could ignite it. The explosion in this case was caused by a significant amount of butane. Crass opined that the door to the room was closed at the time of the explosion. Crass also observed piles of a leafy green substance resembling marijuana in the bedroom. He believed the bedroom was being used to manufacture concentrated cannabis, and he testified explosions are common in such manufacturing labs.

Los Angeles Police Department Detective Tyrone Miles of the Major Narcotics Division also investigated the fire and explosion. He was familiar with clandestine narcotics laboratories and explained the process for manufacturing concentrated cannabis. A tube is packed with marijuana, usually consisting of stems and leaves. A filter is placed at one end of the tube and a cap with a hole in it at the other end. Butane is released into the tube through the hole in the cap.[1] It is released as a liquid, forms a gas at room temperature, and reacts chemically with the THC in the plant material, which becomes a sticky semi-solid resembling wax or honey. Leftover butane travels out of the tube. Although Miles stated that concentrated cannabis manufacturing can be done by a single individual or multiple individuals, he explained that 25 of the roughly 30 concentrated cannabis labs he had investigated had been multi-person operations.

Detective Miles testified that concentrated cannabis was found in the house, and a glass tube with a filter on one end and marijuana inside was found in the bedroom. In addition, pieces of a glass tube were found in fire debris outside the bedroom window. Detective Miles opined that both tubes could be used to extract concentrated cannabis.

B.    Defendant's Testimony

The only direct evidence of events inside the house immediately before the explosion was defendant's testimony in his own defense. Defendant testified that on the day of the explosion, he gave his friend Jesse V. a ride to the De La Cruz house. On the way, Jesse asked defendant if he wanted to smoke some marijuana, and defendant said yes. After arriving at the house at approximately 6:30 p.m., Jesse called out to Cristian

_____

[1]    Similar flammable chemicals such as propane can also be used.

4

De La Cruz, who came outside. The three stood outside talking for about ten minutes. Defendant was acquainted with Cristian, but had not seen him for months. All three men then went inside.

Defendant, Jesse, and Cristian went to the rear middle bedroom, which was Cristian's room. Defendant noticed a lot of butane cans on the floor. He believed the cans were empty. Defendant also noticed a bag of "shake" or "trim," bits and pieces of marijuana that are used to make concentrated cannabis. He also noticed an item of glassware that had waxy residue on it. Defendant recognized a set-up for making concentrated cannabis; he had no idea before entering the room, however, that concentrated cannabis manufacturing was going on. He did not participate in any manufacturing while he was at the house. He had smoked cannabis concentrate before but had never manufactured it.

Defendant sat down with Jesse and Cristian to talk. Soon, Jesse and Cristian left the room to get something to drink and returned with a 12-pack of beer. Defendant began to break down some marijuana he had with him in preparation for rolling a "blunt." Defendant demonstrated the motion he used to roll the blunt, and agreed that his palms were visible and exposed.

Defendant did not intend to smoke the blunt in the bedroom because he had observed the butane cans. He knew that butane gets into the air when it is released from the can, and is highly flammable. He noticed that the windows in the bedroom were closed.

A man came into the room, asked if they wanted anything to drink, and left after they declined. Defendant continued working on his blunt. Jesse and Cristian began going through the bag of trim; defendant thought they were looking for any marijuana buds which could be smoked. Defendant heard someone say, "Stop, stop, don't do that." Before he could look up, he heard a big explosion.

Defendant's clothes were on fire. He jumped out of a window, and wanted to leave the area because there was butane in the house. He climbed a wall, was doused with water by a man, and ended up in a woman's yard. When the woman asked what had

5

happened, defendant told her, "something had gone wrong, a project."  He did not tell the woman that he and two friends were working on a project.  He only said that two more men were in the room, and one more was in the house.  He told the woman to tell his mother that he was sorry because he thought he was going to die and wanted to get his apologies out.

On cross-examination, the prosecution questioned defendant about an incident in September 2014, roughly a year after the explosion, in which defendant was stopped by police for smoking marijuana in his car.  Defendant agreed he had three cans of propane in the car.  He was aware that propane was flammable; he intended to use the propane to heat concentrated cannabis in a glass "skillet" in order to ingest it.  Defendant had a medical marijuana card.  He had nothing to do with the manufacture of concentrated cannabis.

### C.  Rebuttal Evidence and Conviction

In rebuttal, the prosecution offered evidence that the burns which defendant sustained on his hands during the explosion did not extend to the palms of his hands.  There were clear lines of demarcation between the burned and unburned areas, indicating that something "protected [the palms] and prevented the fire from impinging around the palms of the hands."  These lines were consistent with defendant holding something in his palms at the time of the explosion.  They were not consistent with defendant's testimony that he was rolling a blunt at the time of the explosion, because his palms were exposed during that activity.

The jury convicted defendant on count one, manufacturing concentrated cannabis in violation of Health and Safety Code section 11379.6, subdivision (a); on count two, vandalism in violation of Penal Code section 594, subdivision (a); and on count three, recklessly causing a fire of an inhabited structure, in violation of Penal Code section 452, subdivision (b).  The trial court sentenced defendant to a total term of six years in state prison, consisting of five years for the cannabis manufacturing conviction plus one year for the reckless fire conviction.

6

DISCUSSION

Defendant contends there is insufficient evidence to support his conviction for manufacturing concentrated cannabis. He asserts the trial court abused its discretion in permitting the prosecution to cross-examine him about the 2014 incident where he was smoking marijuana with propane in the car; he also argues the court should have given a limiting instruction, assuming cross-examination about that post-arrest incident was proper. He further contends the trial court erred in failing to stay the sentence on two of the three counts of conviction pursuant to section 654. We reject the contentions asserting error at trial, order the sentence on the vandalism count of conviction stayed, and affirm the judgment as modified.

A.     Sufficiency of the Evidence

Defendant contends the evidence shows only his presence at the house just prior to and during the explosion, which is insufficient to support his conviction for manufacturing concentrated cannabis. He contends that such a conviction, based on insufficient evidence, violates his constitutional right to due process.

1.     Applicable law

""""[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]'" (*People v. Williams* (2015) 61 Cal.4th 1244, 1281.)

"The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] 'Although it is the duty of the jury to acquit a

defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'"'" (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793; see *People v. Nelson* (2011) 51 Cal.4th 198, 210.)

### 2. Evidence supporting the verdict

The key evidence of defendant's involvement in cannabis manufacturing came from defendant's statements to Lomeli after the explosion. She "ask[ed] him what had happened." According to Lomeli, "He had told me there was a project that went wrong." The prosecutor asked Lomeli, "And when you asked about what had happened prior to that, who did he tell you had been doing the project?" Lomeli replied, "He just said it was him and his friends." Although defendant was injured at the time he made this statement, Lomeli testified defendant was able to talk and responded logically. Furthermore, paramedic Trejo assessed defendant just minutes later as having good mental capacity, and being oriented and coherent. According to Trejo, defendant did not appear to be in shock and was capable of responding to questions. The jury was entitled to rely on Lomeli's testimony as evidence of defendant's participation in manufacturing.

Viewed in the light most favorable to the judgment, there was additional circumstantial evidence that corroborated defendant's statement that he was involved in the "project" of manufacturing. There was evidence that there were two tubes in the bedroom at the time of the explosion, thus indicating the participation of more than one person in the process: a glass tube with marijuana inside was found in the bedroom, and a second glass tube was found in pieces in a pile of fire debris outside the bedroom window. Detective Miles opined both could be used to extract concentrated cannabis. The burn marks on defendant's palms indicated that something was covering the unburned portions and protecting them. The marks were consistent with defendant

8

holding something which shielded his palms at the time of the explosion. Defendant did testify that he was rolling a blunt at the time of the explosion, but when he demonstrated that action in court, he agreed that his palms were visible and exposed. Thus, the burn marks suggested defendant was holding something other than a blunt, and the jury could have reasonably inferred he was holding a glass tube or other manufacturing equipment instead. (*People v. Williams, supra,* 61 Cal.4th at p. 1281 [we "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence"].) In addition, there was evidence that multi-person manufacturing operations were by far more common than single person operations. Detective Miles testified that 25 of the roughly 30 clandestine marijuana labs he had investigated (about 80%) were multi-person operations. Finally, defendant's reaction after the explosion suggested involvement in the manufacturing. In the immediate aftermath of the explosion, defendant did not express anger or disbelief at what had happened to him, reactions which would be consistent with being an innocent bystander. He asked Lomeli to tell his mother that he was sorry, and he was significantly more reticent when speaking about the incident with firefighter/paramedic Trejo, which are facts consistent with consciousness of wrongdoing.

Defendant's admission, injuries, and post-explosion behavior, together with evidence about the concentrated cannabis manufacturing in general and at the De La Cruz house in particular, is sufficient to permit a reasonable trier of fact to find defendant guilty beyond a reasonable doubt.

### 3. Defendant's criticism of the evidence

We are not persuaded by defendant's efforts to attack the sufficiency of this evidence. To undercut Lomeli's testimony, he cites the rule that verbal admissions should be viewed with caution. (See, e.g., *People v. Diaz* (2015) 60 Cal.4th 1176, 1183.) Jurors were instructed to view evidence of an oral admission by a defendant carefully, and also any fact sought to be proved by the testimony of just one witness. Here, the accuracy of Lomeli's account was reinforced by Investigator Crass's testimony that

Lomeli told him about defendant's statement soon after hearing it. It was also corroborated by other evidence supporting defendant's involvement in the manufacturing process. A rational jury could have found that Lomeli accurately repeated defendant's statements, and that is the end of the matter under the applicable standard of review. (*People v. Smith* (2005) 37 Cal.4th 733, 739.)

Defendant argues that some of the evidence could also be viewed as inconsistent with a finding that he was involved in manufacturing. He points to Investigator Crass's testimony that the marks on defendant's hands were also consistent with clenched fists or with the palms being up against something that could protect them, as well as to evidence that the broken glass tube found in the debris looked very similar to a tube which could be part of a bong. However, as long as the evidence reasonably justified the jury's verdict, the possibility "that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."[2] (*People v. Stanley, supra,* 10 Cal.4th at p. 793.) As we have explained, the evidence reasonably justifies the verdict.

Defendant also points to a truncated quote from the court at sentencing concerning the strength of the evidence. According to defendant, the court expressed misgivings about the evidence, stating, "I stumble a little bit upon what the defendant's involvement in this case was, you know. I do have to tell you that's one of the vacuums in this case for the court. . . . " The next sentence uttered by the court, however, was: "I cannot necessarily state categorically one way or the other that [defendant] didn't have as much involvement in this as Mr. De La Cruz." In context, the court's comment reflected a doubt about the extent of defendant's involvement for comparative sentencing purposes

---

[2]    There are reasons why the jury would have been justified in rejecting defendant's characterization of the evidence. The idea that defendant's hands were closed in a fist or pressed up against clothing is inconsistent with defendant's testimony and accompanying demonstrative physical movements at trial that he was preparing a marijuana cigarette at the moment of the explosion. As for the tube which looked like a piece of a bong, there was no evidence that any other portions of a bong were recovered from the house. Further, Detective Miles testified that he did not believe that the tube was a bong.

10

after defense counsel argued a co-defendant was "the main player" but received a more lenient sentence.[3]  On the question of whether the evidence was sufficient, by contrast, the trial court expressed no doubts when it denied defendant's motion to dismiss pursuant to Penal Code section 1118.1.  The court pointed to defendant's statement to Lomeli and defendant's conduct after the explosion as sufficient to support a conviction.  The trial court's statements therefore do not cause us to doubt whether substantial evidence supports the jury's verdict.

Finally, defendant relies heavily on *People v. Jenkins* (1979) 91 Cal.App.3d 579 to argue the evidence was insufficient.  In that case, the defendant was convicted of manufacturing PCP and possession of precursor chemicals with intent to manufacture PCP.  Defendant was not present at the time the police found the PCP lab, and the only evidence against him was his fingerprints on lab equipment and chemical containers found in his brother's garage.  The court in that case held that "when the contraband is located at premises other than those of the defendant, dominion and control may not be inferred solely from the fact of defendant's presence, even where the evidence shows knowledge of the presence of the drug and its narcotic character." (*Id*. at p. 584.)  Here, more was proven than defendant's mere presence in the De La Cruz house with knowledge that extraction of cannabis concentration was occurring.  As we discuss in detail, *ante*, defendant's statement, conduct, and physical condition were sufficient to permit the jury to find he was involved in the manufacturing.  Thus, defendant's reliance on *Jenkins* is misplaced.

---

[3]      Defendant also points to the following statement by the trial court:  "What I do know is that Mr. Perez was present, he was in a room in which I don't doubt that he was aware of what was transpiring,  What exactly was his involvement?  Was he there innocently?  Was he there on a one time occasion?"  The court's next remark, not quoted by defendant, was "The fact that he wasn't seen there by the neighbors that lived behind the property and even one street over on the next street does not tell me he did not regularly visit the property.  But there's no indication that he did.  That is one of the vacuums I have here."  Again, the court's comments are more correctly understood as referring to the extent of defendant's involvement compared to the involvement of Cristian De La Cruz, who lived at the property.

11

### 4. Constitutional claims

Because we have determined "that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation], as is the due process clause of article I, section 15, of the California Constitution." (*People v. Osband* (1996) 13 Cal.4th 622, 690.) Defendant's constitutional claims fail.

### B. Impeachment with Post-Offense Incident

Defendant contends the trial court abused its discretion under Evidence Code sections 352, 780, and 1101 in permitting the prosecution to impeach statements defendant made about his behavior before and after the 2013 fire at the De La Cruz house with details of a 2014 incident in which he was observed to be smoking in a car which contained canisters of propane. We reject defendant's argument because the trial court's evidentiary ruling was not an abuse of discretion.

### 1. Background

On September 11, 2014, more than a year after the fire at the De La Cruz house and nearly ten months after he was charged in this matter, defendant was stopped by police for smoking marijuana in his car. The windows in the car were open. There were three 14-ounce cans of propane in the car. Concentrated cannabis was found in the car, along with a device designed to be used to smoke the concentrate.

Before trial, the prosecution agreed that it would not admit evidence concerning the 2014 incident in its case in chief. The prosecution, however, reserved its right to cross-examine defendant about the incident for impeachment purposes, depending on what defendant said during his testimony.

On direct examination, defense counsel asked defendant if he intended to smoke marijuana in Cristian's bedroom, and defendant replied, "Oh, no. Because I knew that butane is really flammable so I remember as I'm breaking down the weed, I told Jesse,

12

'Hey, we should smoke this outside.'" On cross-examination, the prosecution asked, "So you wouldn't want to be caught in an enclosed space with lighter fluid again, would you?" Defendant replied, "No, not—it's not safe." The prosecution then asked, "Since the incident, have you been in an enclosed space with lighter fluid?" Defense counsel's objection was not in time to prevent defendant from answering, "Yes."

A sidebar ensued, during which it became apparent that all parties understood this question to refer to the 2014 incident. The prosecution contended that since defendant was "blaming two other people for doing something to him, a natural question would be to ask if he's put in that situation again, because it shows that [Cristian] . . . and [Jesse] were not the ones that were doing it. [Defendant] was the one engaged and that's why it's not as big of a deal for him to do it again." After the trial court asked what specific testimony by defendant the 2014 incident would impeach, the prosecution stated, "It's directly contradicting something he said about being so cautious and not lighting up near butane." The prosecution also argued impeachment was proper because "[w]hen [defendant] points the finger at two other people saying they did this and he's the victim, it is contrary to that stance that he would be in a [position] . . . where he would have three cans of propane . . . and a lit cigarette."

The trial court agreed with the prosecution. The court stated: "The People have raised the issue in their question to impeach [defendant] on the issue of his concern over the flammability as he has stated in his direct testimony, he was concerned about lighting the blunt in the room where the propane canisters—the butane canisters were located." The court concluded, "I believe the question [about the incident] is proper impeachment."

Although the court stated it would allow the prosecution to ask defendant if he was in a car with propane and a lit cigarette, the court barred the prosecution from cross-examining defendant about whether he had concentrated cannabis in the car. The court stated, however, that it would permit defense counsel to elicit testimony about the cannabis if defendant felt it was in his interest to do so: "Now, I am not foreclosing . . . how the defense would like to proceed with this matter. The defense wishes to open it up and follow through based on the fact that there is allegedly and was allegedly a valid

medical marijuana card at the time, the defense is entitled to do that. [¶] I think the defense is entitled to raise any charges emanating from this detention [the 2014 incident where police stopped defendant in the car]. I don't know if it's going to come up as a detention, but if the defense wishes to raise it, you can raise it, and the charges were dismissed, of course."

After the discussion at sidebar, the prosecution continued its cross-examination of defendant, asking, "Sir, isn't it true that you were driving in your car on September 11, 2014, while smoking while there were three 14-ounce cans of propane in the car?" Defendant replied, "Yes." The prosecution asked, "And are you aware that propane is flammable?" Defendant replied, "Yes."

On further redirect examination, defendant's attorney elicited testimony from defendant explaining he was arrested for possession of marijuana as a result of the 2014 incident, but the charges were dismissed four days later because defendant had a medical marijuana card.

### 2. Law

All relevant evidence is admissible, unless otherwise provided by statute. (Evid. Code § 351.) "Evidence is relevant if it tends to prove or disprove any disputed fact or consequence, including evidence relevant to the credibility of a witness." (*People v. Johnson* (2015) 61 Cal.4th 734, 766, citing Evid. Code § 210; see *People v. Dykes* (2009) 46 Cal.4th 731, 764 ["prosecutor is entitled to attempt to impeach the credibility of a defendant's testimony"].) Evidence Code section 780 provides that the "existence or nonexistence of any fact testified to by" a witness may be considered in assessing his or her credibility. (Subd. (i).) Evidence Code section 1101, which provides that evidence of a person's character may not be admitted to prove his or her conduct on a specified occasion, does not "affect[] the admissibility of evidence offered to support or attack the credibility of a witness." (Subd. (c).)

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its

admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

A trial court's decision under Evidence Code section 352 will not be disturbed on appeal unless the court abused its discretion. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

### 3. Relevance

Defendant contends that the trial court abused its discretion in allowing cross-examination on the 2014 incident because it lacked any relevance. He advances two arguments. First, he claims the facts of the 2014 incident were so dissimilar to the facts of the 2013 explosion at the De La Cruz house that nothing about the 2014 incident called in to question his testimony that he was concerned about flammable gas in the De La Cruz house. Second, he argues the prosecution cross-examined defendant about the collateral matter of whether he would ever be caught with lighter fluid (butane) again simply to elicit something to contradict. (See *People v. Lavergne* (1971) 4 Cal.3d 735, 744 ["A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted"].)

We agree that the 2013 explosion and the later 2014 incident have some differences. The chemical substances involved were different. The windows in defendant's car were open, while the windows in the De La Cruz bedroom were closed. Defendant apparently believed there was a possibility that butane gas had been released and accumulated in the bedroom, but believed that no propane gas had been released in his car, or that any leaking gas would disperse through the car's open windows.[4] More important, though, is the key similarity between the two incidents: the chemical substances involved are both highly flammable. The jury could find the 2014 incident rendered defendant's testimony about the events leading to the explosion less worthy of

---

[4]     No evidence of the properties of propane was admitted at trial, and so there is no evidence that it would disperse harmlessly out the open window of a moving car.

belief because, if his testimony were true, he would have be even more cautious of *any* flammable substance under *any* circumstance after the fact. The two incidents are similar enough for impeachment purposes.

Further, the groundwork for this impeachment was laid, not principally by the prosecution's specific questions on cross-examination, but by defendant's attorney on direct examination. Defendant's statements indicating he was aware of the dangers of butane gas and planned to smoke outside were elicited by his own lawyer on direct examination. This line of questioning can be reasonably understood as an attempt to distance defendant from any manufacturing. Defendant's subsequent choice to carry around containers of a highly flammable gas after being badly burned creates a reasonable inference that he was in fact comfortable around flammable gases. It was therefore proper and relevant for the prosecution to impeach defendant on his claim of being cautious around flammable substances with a specific instance where he displayed a lack of caution. Evidence of a specific instance of a witness's conduct is admissible to impeach a witness when it proves some portion of his testimony false. (See *Andrews v. City and County of San Francisco* (1988) 205 Cal.App.3d 938, 946 [police officer denied assaulting plaintiff during booking and claimed he was a "patient" man who had learned to exercise restraint in bookings; evidence that police officer had assaulted other suspects before and after plaintiff's claimed assault was admissible pursuant to Evidence Code section 780 to impeach his testimony that he was patient and restrained].)

    4.  Prejudicial potential

Defendant also contends the trial court abused its discretion in assessing the prejudicial potential of the 2014 incident. He contends the trial court focused on the presence of concentrated cannabis in the car as the source of prejudice, but the real potential for prejudice arose from the propane canisters, which earlier evidence had shown could be used to manufacture concentrated cannabis. Defense counsel made this argument to the trial court, contending "it has extreme prejudicial value because—or danger because the jury is going to infer that he had this propane gas for an illegal purpose."

While there was some potential the evidence could be prejudicial, "[e]vidence which has probative value must be excluded under section 352 only if it is 'undu[ly]' prejudicial despite its legitimate probative value. (*People v. Waidla* [(2000)] 22 Cal.4th [690,] 724 [if it 'poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome"'].)" (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 597.) As we discuss *ante*, the 2014 incident did have probative value and we cannot say the trial court abused its discretion when it permitted the prosecution to cross-examine defendant about the incident. Our conclusion in this respect is reinforced by actions taken by the trial court and counsel for defendant. Defense counsel, with the court's permission, opted to question defendant in greater depth concerning the circumstances of the 2014 incident in order to demonstrate a credible, legitimate purpose for defendant's propane possession, specifically to smoke marijuana for medical purposes. As counsel was aware, the trial court intended to—and did—give a broad limiting instruction that any possession and/or use of marijuana by defendant could not be used to convict him of any of the charges in this case. We believe these measures mitigated the potential for undue prejudice and reinforce our conclusion that no abuse of discretion occurred.

### C. The Absence of a Limiting instruction

Defendant did not request an instruction that would limit the jury's use of the 2014 incident for impeachment purposes only nor did he ask the trial court to instruct the jury he could not be convicted on the charges in this case based on that incident. He contends the trial court nevertheless erred in failing to give such an instruction because (1) the prosecution requested the instruction as part of its attempt to have evidence of the 2014 incident admitted and/or (2) the trial court had a sua sponte duty to give the instruction.

### 1. Background facts

During its discussion with counsel about the 2014 incident, the trial court acknowledged that defendant wanted to raise the issue of having a valid medical marijuana card. The court stated, "We've had some discussion about that and, you know,

17

I crafted some type of jury instruction that says he cannot be convicted for the charges in this case based upon the fact that he was smoking marijuana or was in possession of marijuana or planned to smoke marijuana. Those issues are not relevant to the manufacturing of the concentrated cannabis."

The prosecution replied, "There's a jury instruction that could also be put in place to cure this, which is the limited use, basically, the [2014 incident] can be used as impeachment. But much like what the court crafted itself, you can't convict him of this case based on subsequent behavior. It goes to impeachment only." Defense counsel did not request such an instruction for the 2014 incident.

During closing argument, the prosecution argued, "What is a reasonable response for someone who went through and—even if you believed him, even if you thought it was the other two who did it and he's just a victim, was his testimony consistent with someone who is a victim of an atrocious act? Or is it more consistent with someone who was participating in what burned him? [¶] Now, counsel said you don't think he's taking his almost dying seriously? No, not from his behavior on the stand and certainly not from his behavior on September 11th. [¶] If you were burned that badly by someone else's act, why would you put yourself in the same position? Because you put yourself in that position on July 6, it's not 'wrong place wrong time.'"

2. Analysis

The prosecution's reference to a limiting instruction was simply a suggestion of one method of minimizing any prejudice from the 2014 incident. It did not rise to the level of a request for an instruction.

Defendant relies on *People v. Collie* (1981) 30 Cal.3d 43 (*Collie*) to show that a trial court can have a sua sponte duty to give a limiting instruction. That opinion states: "Evidence of past offenses may not improperly affect the jury's deliberations if the facts are equivocal, the charged offense is dissimilar, or the evidence is obviously used to effect one or more of the many legitimate purposes for which it can be introduced." (*Id.* at p. 64.) The court in *Collie* recognized, however, that "[t]here may be an *occasional*

18

*extraordinary* case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose. In such a setting, the evidence might be so obviously important to the case that sua sponte instruction would be needed to protect the defendant from his counsel's inadvertence. But we hold that in this case, and in general, the trial court is under no duty to instruct sua sponte on the limited admissibility of evidence of past criminal conduct." (*Ibid.*, italics added.)

Defendant has not shown that this is one of the "occasional extraordinary" cases envisioned by the court in *Collie, supra,* 30 Cal.3d at p. 64. The facts surrounding the 2014 incident are more accurately characterized as "equivocal" than "unprotested." Defendant's conduct in the 2014 incident involved smoking marijuana in a car with propane canisters present, not using a flammable gas to manufacture concentrated cannabis in a house. There was no evidence of any extraction tubes in defendant's car, and defendant offered a reasonable and legitimate explanation for possessing the propane which did not involve manufacturing concentrated cannabis. Evidence of the 2014 incident also was not a dominant part of the case against defendant; it was not introduced until cross-examination of defendant during the defense case. The dominant evidence against defendant was Lomeli's testimony concerning defendant's statement about the project and defendant's behavior after the explosion and fire. Thus, the trial court did not have a sua sponte duty to give the jury a limiting instruction.

### D. Penal Code Section 654 Claim

Defendant contends that only one physical act gives rise to all three offenses, and so he may only be sentenced on the count one manufacturing conviction; in his view, the count two vandalism conviction and the count three recklessly causing a fire conviction must both be stayed pursuant to Penal Code section 654.

Penal Code section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of

19

imprisonment, but in no case shall the act or omission be punished under more than one provision."

Penal Code section 654 bars multiple punishments for convictions arising out of an indivisible course of conduct committed pursuant to a single criminal intent or objective. (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "Section 654 [also] prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.)[5] As the court recognized, however, "what is a single physical act might not always be easy to ascertain. In some situations, physical acts might be simultaneous yet separate for purposes of section 654." (*Id.* at p. 358.)

There is no single physical act that is the basis for all three offenses. But we agree with defendant that the same physical act was the basis of both the count two reckless fire and the count three vandalism convictions. The recklessly caused fire was the act that caused the vandalism. Sentence on the vandalism offense, which was imposed concurrently, must therefore be stayed.

This leaves two unstayed counts: the manufacturing concentrated cannabis offense (count one) and the reckless fire offense (count two). No single physical act violated the criminal statutes on which counts one and two are based. The act of manufacturing requires the release of a flammable gas such as butane or propane, but ignition of such a gas is not part of the manufacturing process. It was the reckless act of undertaking the manufacturing in a room with no ventilation and where full cans of butane were stored which led to the explosion and resulting fire. When the gaseous butane exploded and started a fire, it resulted in the further explosion of butane cans, increasing the damage

---

[5]     "Different provisions of law punishing the same physical act—for example, driving while intoxicated and on an expired license, or a felon's carrying a loaded and concealed firearm—are generally directed at distinct societal evils. It might make sense to punish these distinct evils separately, and a criminal justice system could logically and reasonably do so. But doing so would be contrary to section 654's plain language, which prohibits multiple punishment for '[a]n act or omission that is punishable in different ways by different provisions of law.'" (*Id.* at p. 356.)

caused to the house.  Thus, Penal Code section 654 does not bar punishment for each of these offenses, i.e., manufacturing concentrated cannabis and recklessly causing a fire.

## DISPOSITION

The judgment is modified by staying the imposition of sentence on defendant's conviction for vandalism, count two.  The clerk of the superior court is instructed to prepare an amended abstract of judgment in accordance with this disposition, and to deliver a copy of the amended abstract to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:



MOSK, Acting P.J.



KRIEGLER, J.


21